Olof FRANZON, M.D. and Women's Medical & Surgical Care, P.C., Plaintiffs,

v.

MASSENA MEMORIAL HOSPITAL, Board of Managers of Massena Memorial Hospital, Medical Executive Committee of Massena Memorial Hospital, Jayant J. Jhaveri, M.D., James B. Watson, Bedros Bakirtzian, M.D., Christine Rowe–Button, M.D., Sateesh K. Goswami, M.D., Steven Schwam, M.D., Melchiore L. Buscemi, M.D., Edward Burke, M.D., Kenneth Maxik, Tae–Sik Choi, M.D., Michael Maresca, M.D., Lois Nicandri, Tina Corcoran, Keith Bain and Marilyn Carr, Defendants.

No. 97–CV–150.

United States District Court, N.D. New York.

Aug. 8, 1997.

Pollack & Greene, LLP, New York City (Mitchell G. Mandell, Simon I. Allentuch, of counsel), for Plaintiff.

Thuillez, Ford Law Firm, Albany, NY (Donald P. Ford, Jr., of counsel), for Defendants.

Fisher, Bessette Law Firm, Malone, NY (James P. Bessette, of. counsel), for Lois Nicandri, Defendant.

## MEMORANDUM-DECISION
## AND ORDER

McAVOY, Chief Judge.

This case arises from a civil rights action alleging retaliatory harassment. Plaintiffs, Olof Franzon, M.D. and his professional corporation, Women's Medical & Surgical Health Care, P.C., bring this Complaint pursuant to 42 U.S.C. section 1983, alleging violations of his constitutional rights. Named as defendants in this action are Massena Memorial Hospital ("MMH"), the Board of Managers of Massena Memorial Hospital (the "Board of Managers"), the Medical Executive Committee of Massena Memorial Hospital (the "MEC"), *et al.* Plaintiffs allege: (1) First Amendment Free Speech Violation; (2) Fourteenth Amendment Equal Protection Violation; (3) Punitive Damages (4) Attorneys' Fees (5) Defamation; (6) Tortious Interference with Business Relations and; (7) Tortious Interference with Contract.

Currently pending before this Court is defendants' motion to dismiss. Alternatively, defendant's move for summary judgment.

## I. BACKGROUND

Plaintiff Franzon is a board certified obstetrician/gynecologist licensed to practice medicine in the State of New York. (Complaint ¶ 26). Plaintiff was first granted privileges to practice medicine at MMH in January, 1993. (Complaint ¶ 27). According to the laws of MMH, a physician such as Dr. Franzon can be credentialed for a period of no more than two years. Thereafter, a physician must obtain reappointment to the hospital medical staff.

In or about September, 1995, Franzon began to openly and publicly advocate for the addition of nurse-midwifery to the services offered by MMH. Defendants were openly hostile to nurse-midwifery and opposed its practice at MMH. (Complaint ¶ 28). Franzon also made statements at public meetings of the Board of Managers and in the MMH community at large that he believed that MMH refused to grant hospital privileges to nurse-midwifes for anti-competitive reasons. (Complaint ¶ 37). While MMH eventually granted ostensible privileges to a nurse-midwife, Franzon states that the privileges were intentionally made so limited as to make the practice of nurse-midwifery effectively impossible or certainly economically unfeasible. (Complaint ¶ 39). Franzon publically criticized this unduly restrictive policy. (Complaint ¶ 40). Franzon also made statements at public meetings of the Board of Managers and in the Massena community at large regarding other issues concerning the quality of medical care at MMH. (Complaint ¶ 41). Among other issues, Franzon publicly questioned MMH's abnormally high C–Section rate, as well as the past and current billing practices engaged in by defendant, Steven Schwam, M.D., and Certified Registered Nurse Anesthetists employed by MMH. (Complaint ¶ 42). In fact, the New York State Department of Health and the Office of the Attorney General's Medicaid Fraud Control Unit have recently initiated investigations into Schwam's and MMH's billing practices. (Complaint ¶ 43).

Franzon alleges that shortly after he first suggested that nurse-midwives should be allowed to practice and deliver babies at MMH, defendants entered into a conspiracy, and have engaged in a campaign of overt and malicious acts in furtherance of that conspiracy, to silence Franzon and excommunicate him from the Massena medical community and community at large (the "Conspiracy"). (Complaint ¶ 29). Franzon alleges that defendants made numerous false, malicious and defamatory statements about his competence as a doctor to his patients, prospective patients, and the community at large. Franzon alleges that defendants knew that they were obligated to provide his patients with insurance referrals, and that defendants' refusal to issue the necessary referrals forced such

patients to choose between seeing Franzon for treatment and having their respective insurance carriers pay for the subject treatment. (Complaint ¶¶ 30–31, 110). Furthermore, Franzon alleges that in an attempt to destroy his reputation and career, defendants have justified their actions by maliciously filing false or de minimis complaints in his credentials files.

Franzon alleges that in furtherance of the conspiracy, defendants created a double standard, in violation of the equal protection clause of the United States Constitution, whereby minuscule or non-existent violations of hospital regulations, by-laws or protocols were used to harass, penalize and damage him while more substantial violations by other doctors were ignored.

Franzon alleges that in furtherance of this Conspiracy, on September 10, 1996, the MEC refused to recommend renewal of his medical privileges. In accordance with the by-laws of MMH, Franzon requested a Fair Hearing review of the adverse recommendations of the Medical Executive Committee. At the time Franzon filed suit, his privileges had not been revoked—there was merely a non-binding recommendation that such privileges not be renewed. (Complaint ¶ 33). However, Franzon's claims do not stem from a wrongful revocation of privileges, rather, they are predicated on defendants' campaign of retaliatory harassment. (Complaint ¶¶ 44–45).

Franzon alleges that as a result of these constitutional violations, he has been injured in his ability to practice medicine, has suffered a loss of reputation among his peers and in the community, and has experienced extreme emotional distress. Franzon asserts that because each injury is entirely separate and distinct from the maintenance of his privileges, these injuries exist even though he continues to maintain his privileges at MMH.

## II. DISCUSSION

Defendants seek dismissal of all claims contained in the Complaint for Franzon's failure to exhaust his administrative remedies. Defendants also seek dismissal on the grounds that plaintiffs' Complaint is premature because Franzon still retains his medical privileges. In the present case, no diversity jurisdiction has been alleged. Thus, defendants contend that in the event the Court dismisses the federal claims contained therein, supplemental jurisdiction over the state claims should be denied and the state claims dismissed. Alternatively, defendants seek dismissal of the Complaint in its entirety pursuant to Rule 56 of the Federal Rules of Civil Procedure.

In addition, defendants also move for a more definite statement pursuant to Rule 12(e) on the grounds that the complaint is ambiguous as to the role that each defendant allegedly played in the conspiracy alleged in the Complaint.

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that a cause of action shall be dismissed if the complaint fails "to state a claim upon which relief can be granted." In order to survive a Rule 12(b)(6) motion to dismiss, plaintiff must assert a cognizable claim and allege facts that, if true, would support the claim. Dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see, e.g., Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir.1991). In evaluating these requirements, the Supreme Court has accorded civil rights pleadings liberal construction. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Nevertheless, a plaintiff must still allege specific facts indicating a claim upon which relief can be granted. *See Birnbaum v. Trussell*, 347 F.2d 86 (2d Cir.1965); *Burt v. City of New York*, 156 F.2d 791 (2d Cir.1946). While the court will not accept mere conclusions of law, the court should accept the pleader's description of what happened along with any conclusions that can be reasonably drawn therefrom. *See Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991); *Murray v. City of Milford*, 380 F.2d 468 (2d Cir.1967). Furthermore, when ruling

on a Rule 12(b)(6) motion to dismiss, the court will limit its consideration to the facts asserted on the face of the complaint. *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989).

With this standard in mind, the Court now addresses the sufficiency of plaintiffs' Complaint.

### i. Exhaustion of Administrative Remedies

■ Defendants contend that plaintiffs' action should be dismissed for Franzon's failure to exhaust his administrative remedies before the Public Health Council (PHC). Under New York Law, a physician who wants restoration of his privileges must first exhaust his administrative remedies by filing a complaint with and obtaining a final determination from the PHC before filing a court action. *Guibor v. Manhattan Eye, Ear & Throat Hospital,* 46 N.Y.2d 736, 413 N.Y.S.2d 638, 386 N.E.2d 247 (1978). The function of the PHC is to determine whether there is any medical justification for the withdrawal of the doctor's privileges. *Johnson v. Nyack Hospital,* 964 F.2d 116, 122 (2d Cir.1992). Where reinstatement is not sought by the physician, but a legitimate medical reason for the termination is a complete defense to the physician's claim, then the physician must still resort to the PHC before seeking redress in the courts. *Johnson,* 964 F.2d at 121.

■ Defendants' contention need not detain us long, as it is well-settled that "the exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to 42 U.S.C. § 1983." *Patsy v. Board of Regents of the State of Florida,* 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982); *see also Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) ("[section] 1983 contains no exhaustion requirement beyond what Congress has provided."); *Wilbur v. Harris,* 53 F.3d 542 (2d Cir.1995). Indeed, as the Supreme Court explained in *Patsy,* "Congress intended [section 1983] to 'throw open the doors of the United States courts' to individuals who were threatened with or who had suffered, the deprivation of constitutional rights ... and to provide these individuals immediate access to the federal courts notwithstanding any provision of state law to the contrary." *Patsy,* 457 U.S. at 405.

In *Patsy,* the petitioner, Georgia Patsy, filed an action in federal court based on race and sex discrimination under section 1983 without exhausting her state administrative remedies. Referring to a long line of cases interpreting section 1983 and the Congressional purpose in enacting the statute, the Supreme Court ruled that where constitutional rights are at stake, a plaintiff is allowed to proceed directly to federal court because federal question jurisdiction is invoked. *Patsy,* 457 U.S. at 516, 102 S.Ct. at 2568. In the present case, plaintiffs' section 1983 claim alleges violations of Franzon's constitutional rights; therefore, Franzon should not be required to exhaust his state administrative remedies before filing in federal court.

### ii. Primary Jurisdiction Doctrine

Defendants assert for the first time in their Reply Memorandum of Law that the doctrine of primary jurisdiction provides an alternative basis to dismiss plaintiffs' Complaint. (Defendants' Reply at 1). For the reasons set forth below, we conclude that this doctrine, which is related to (and commonly confused with) exhaustion, is inappropriate in the present case.

■ The primary jurisdiction doctrine applies "whenever enforcement of the claim requires the resolution of issues which, under the regulatory scheme, have been placed within the special competence of an administrative body." *Western Pacific R.R. Co.,* 352 U.S. at 64, 77 S.Ct. at 165; *see also Johnson,* 964 F.2d at 122–23 (finding the doctrine applicable to cases involving state agencies). The doctrine ensures that courts and agencies with concurrent jurisdiction over a matter do not work at cross-purposes, *Fulton Cogeneration v. Niagara Mohawk Power,* 84 F.3d 91, 97 (2d Cir.1996), and is invoked when an administrative agency's allegedly superior fact finding ability would assist a judge in reaching a decision. *See Golden Hill Paugussett Tribe of Indians v. Weicker,* 39 F.3d 51, 60 (2d Cir.1994). Therefore,

fundamental to those cases that have dismissed a plaintiff's federal claims on the basis of primary jurisdiction, is the conclusion that the resolution of factual issues by the administrative agency will be dispositive of the legal issues before the court. *See Johnson*, 964 F.2d at 121 ("whether defendants had a proper medical reason for terminating Johnson's surgical privileges will be dispositive of Johnson's antitrust claims. . . ."). *But see Fulton*, 84 F.3d at 97 ("primary jurisdiction [is] inappropriate because the issues of contract interpretation here are neither beyond the conventional expertise of judges nor within the special competence of the [administrative agency].").

■ As a threshold matter, of course, a court must find that the agency has jurisdiction over the issue presented. *Golden Hill*, 39 F.3d at 59. In the present case, the Court finds that the state administrative agency's (PHC's) jurisdiction does not extend to the issues being litigated. Here, "the function of the PHC is to determine whether there is any medical justification for the withdrawal of the doctor's privileges." *Johnson*, 964 F.2d at 116. However, Franzon is *not* presently seeking damages or injunctive relief relating to the termination of privileges. Instead, Franzon seeks damages for defendants' violation of his constitutional right to free speech as well as for defamation, tortious interference, and other related torts. In fact, the maintenance of Franzon's privileges is entirely unrelated to his damages claims. In other words, if patients refuse to see Franzon as a result of defendants' retaliatory harassment, even the continued maintenance of his privileges at MMH will do little to mitigate his damages.

Moreover, the PHC may only examine a very narrow range of issues, none of which involve the adjudication of constitutional rights. Public Health Law § 2801-b(2) provides that "[a]ny person claiming to be aggrieved by an *improper practice* as defined in this section may . . . file with the public health council a verified complaint." (McKinney 1988). An "improper practice" is defined as the refusal to act upon an application for staff membership or professional privileges "without stating the reasons" or

for stated reasons which "are unrelated to standards of patient care, patient welfare, the objectives of the institution or the character or competency of the applicant." Public Health Law § 2801-b(1) (McKinney 1988). Thus, the PHC's applicable mandate restricts its jurisdiction to disputes concerning the wrongful denial of privileges. While it is possible that Franzon may resort to the PHC if the Hospital ultimately denies his medical privileges, at that time the PHC would still be unable to decide his constitutional claims.

■ A state administrative agency never reviews federal claims over which it lacks original jurisdiction, rather, the state agency resolves difficult issues of fact. *See Johnson*, 964 F.2d at 122–23 (state agency can resolve complicated, factual issues underlying antitrust claim before district court considers issue). Therefore, fundamental to those cases that have dismissed a plaintiff's federal claims on the basis of primary jurisdiction, is the conclusion that the resolution of factual issues by the administrative agency will be dispositive of the legal issues before the court. *See, e.g., Johnson*, 964 F.2d at 121. For example, in *Johnson*, the plaintiff's antitrust claim was dismissed because the court determined that Johnson could not prevail on his antitrust claim if defendants had legitimate medical reasons for terminating his surgical privileges. *Johnson*, 964 F.2d at 121. However, in the present case additional fact-finding by the PHC will not be dispositive of Franzon's claims, as Franzon is not contesting the revocation of his privileges. In fact, Franzon maintains an actionable retaliatory harassment claim regardless of whether his privileges are justifiably terminated. Therefore, this Court determines that the primary jurisdiction doctrine cannot be properly applied to this case.

### iii. Plaintiffs' Action is not Premature

■ Defendants also seek dismissal on the grounds that plaintiffs' Action is premature because Franzon has not yet had any privileges denied. However, plaintiffs' retaliatory harassment claims remain actionable despite the fact that Franzon still maintains his privileges because defendants will still have defamed him, illegally refused to refer

patients, and filed false reports among other wrongful acts, all allegedly in retaliation for the exercise of Franzon's first amendment right to free speech. (Complaint, *passim*). Accordingly, this Court finds plaintiffs' claims are not premature at this time.

## B. Defendants' Motion for a More Definite Statement

Defendants have also moved for a more definite statement pursuant to Rule 12(e) on the grounds that the complaint is ambiguous as to the role that each defendant allegedly played in the conspiracy alleged in the complaint. (Defendants' Motion ¶ 3). This Court both dismisses and grants defendants' Motion with respect to certain named defendants in plaintiffs' Complaint.

Emphasizing the "liberal" system of notice pleading under the Federal Rules, in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court held that "a short plain statement" is sufficient in Title 42 section 1983 cases. Although the Court expressly left open the possibility that a heightened pleading standard may be appropriate in section 1983 cases brought against defendants in their individual capacity, the Second Circuit has rejected this theory. *Castro v. United States*, 34 F.3d 106 (2d Cir.1994).

■ Because the ultimate issue in retaliatory harassment disputes involves a defendant's motive and intent, it is often difficult to plead with specificity in a section 1983 complaint. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir.1987); *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir.1979). Indeed, Rule 9(b) of the Federal Rules of Civil Procedure provides that "[m]alice, intent, knowledge, and other conditions of the mind ... may be averred generally." While a bald and uncorroborated allegation of retaliation might prove inadequate to withstand a motion to dismiss, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants may reasonably be inferred. *See Murphy*, 833 F.2d at 108.

### i. First Amendment Free Speech Violation Claim

■ Plaintiffs claim that the defendants' actions were done in retaliation for Franzon's advocation of nurse-midwifery and his criticism of Hospital policy. Franzon claims that such actions violated his first amendment rights. To properly plead such a claim, plaintiffs must show that Franzon's conduct was protected by the first amendment and, next, that such conduct prompted the defendants' retaliatory action. *Mount Healthy City School Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Applying this standard to the facts presented, this Court finds that the facts pleaded are sufficient to withstand a motion to dismiss with respect to named defendants: Massena Memorial Hospital, Board of Managers Of Massena Memorial Hospital, Medical Executive Committee of Massena Memorial Hospital, Jayant J. Jhaveri, M.D., James B. Watson, Bedros Bakirtzian, M.D., Christine Rowe–Button, M.D., Sateesh K. Goswami, M.D., Steven Schwam, M.D., Melchiore L. Buscemi, M.D., Edward Burke, M.D., M.D:, Michael Maresca, M.D., Lois Nicandri, Tina Corcoran, Keith Bain and Marilyn Carr:

■ This Court concludes that plaintiffs have failed to state a cognizable first amendment claim against defendants Kenneth Maxik and Tae–Sik Choi, M.D.. Defendant Kenneth Maxik is the Senior Director of Administrative Services. (Complaint ¶ 18). However, plaintiffs' Complaint neither mentions Maxik as a member of the Board of Managers, the MEC, or as an individual intentionally and maliciously making false statements to Franzon's patients, potential patients, and the community at large. That Maxik is a member of the Hospital, is too vague and conclusory an allegation to withstand defendants' motion to dismiss. Notwithstanding this Court's attempt to "draw all inferences in favor of the pleader", *see Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir.1993) (*citing IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir.1993)), this Court concludes that plaintiffs have failed to state a

cognizable first amendment claim against Defendant Kenneth Maxik.

■ Defendant Tae–Sik Choi, M.D. is an active medical staff member of the Hospital and Chief of Obstetrics. (Complaint ¶ 19). Dr. Choi is the only other obstetrician/gynecologist in the Massena area. (Complaint ¶ 66). Plaintiffs' Complaint mentions Choi as the benefactor of defendants' double standard, whereby minuscule or non-existent violations of hospital regulations, by-laws or protocols were used to harass, penalize and damage Franzon while more substantial violations by Choi were ignored. However, plaintiffs' Complaint neither mentions Choi as a member of the Board of Managers, the MEC, or as an individual intentionally and maliciously making false statements to Franzon's patients, potential patients, and the community at large. That Choi is a member of the Hospital, is too vague and conclusory an allegation to withstand defendants' Motion to dismiss.

### ii. Fourteenth Amendment Equal Protection Claim

■ It is plaintiffs' contention that the Complaint states an actionable equal protection claim because Franzon was deprived of equal protection of the law or equal privileges and immunities under the law. The facts alleged, however, do not substantiate his claim. It may very well be that Franzon's outspoken behavior prompted the defendants' actions, nevertheless, a simple showing of unequal application of the law does not give rise to an equal protection claim, even if it is malicious. *Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944). Indeed, the Supreme Court acknowledged that an equal protection cause of action may not be construed as "general federal tort law." *Griffin v. Breckenridge,* 403 U.S. 88, 101–02, 91 S.Ct. 1790, 1797–98, 29 L.Ed.2d 338 (1971). Rather, a plaintiff must demonstrate "some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' actions." *Griffin,* 403 U.S. at 102, 91 S.Ct. at 1798. While equal protection claims may encompass more than racially motivated conspiracies, animus based generally upon the economic views or commercial interests of a class are beyond the scope of equal protection. *United Bhd. Of Carpenters & Joiners of America, Local 610 v. Scott,* 463 U.S. 825, 837–39, 103 S.Ct. 3352, 3360–62, 77 L.Ed.2d 1049 (1983). Accordingly, this Court rejects plaintiffs' equal protection claim against all named defendants.

### C. Defendants' Motion for Summary Judgment

Defendants have, alternatively, sought dismissal of the Complaint in its entirety pursuant to Rule 56 of the Federal Rules of Civil Procedure. Under Fed.R.Civ.P. 12(b), a court may convert a motion to dismiss into a motion for summary judgment to be disposed of as provided in Rule 56 if "matters outside the pleadings are presented to and not excluded by the court." Fed.R.Civ.P. 12(b). In the instant case, defendants have chosen to supplement their papers with supporting documents. However, the Court refuses to convert the present motion to dismiss into a motion for summary judgment.

■ At this point in the litigation between the parties it would be premature to rule on the applicability of summary judgment absent further discovery. *See United States v. Yonkers Bd. of Ed.,* 893 F.2d 498, 500 (2d Cir.1990). Because summary judgment is a drastic device, it should not be granted where one party has yet to exercise its opportunities for pre-trial discovery. *See, e.g., National Life Ins. v. Solomon,* 529 F.2d 59 (2d Cir.1975). Indeed, to do otherwise would be both premature and unwise. *Klebanow v. Funston,* 35 F.R.D. 518, 520 (S.D.N.Y.1964) ("a decision of such importance should await the completion of pre-trial discovery").

### D. Plaintiffs' State Claims

Having found federal jurisdiction over plaintiffs' claims, under 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over plaintiffs' pendant state law claims. Plaintiffs' supplemental state claims arise from the same case and controversy over which this Court has original jurisdiction. *United*

*Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART defendants' motion to dismiss. It is therefore

**ORDERED,** that defendants' motion to dismiss is GRANTED with respect to defendants Kenneth Maxik and Tae–Sik Choi, M.D., and DENIED with respect to all remaining named defendants.

**IT IS SO ORDERED.**