Olof FRANZON, M.D. and Women's Medical & Surgical Health Care, P.C., Plaintiffs,

v.

MASSENA MEMORIAL HOSPITAL, Board of Managers of Massena Memorial Hospital, Medical Executive Committee of Massena Memorial Hospital, Jayant J. Jhaveri, M.D., James B. Watson, Bedros Bakirtzian, Christine Rowe–Button, M.D., Sateesh K. Goswami, M.D., Steven Schwam, M.D., Melchiore L. Buscemi, M.D., Edward Burke, M.D., Kenneth Maxik, M.D., Tae–Sik Choi, M.D., Michael Maresca, M.D., Lois Nicandri, and Tina Corcoran, Defendants.

No. 97–CV–0150.

United States District Court, N.D. New York.

Dec. 29, 1998.

Pollack & Greene, New York (Mitchell G. Mandell, of counsel), for Plaintiffs,

Thuillez, Ford Law Firm, Albany (Donald P. Ford, Jr., of counsel), for Defendants Massena, Board of Managers, Medical Executive Committee, Jhaveri, Watson, Bakirtzian, Rowe–Button, Goswami, Schwam, Buscemi, Burke, Maxik, Choi, Maresca, Nicandri, and Corcoran, D.

D'Agostino, Krackeler Law Firm, Menands, NY (Mae A. D'Agostino, of counsel), for Defendant Jhaveri.

Donahue, Sabo Law Firm, Albany, NY (Alvin O. Sabo, of counsel), for Defendant Rowe–Button.

Smith, Sovik Law Firm, Syracuse, NY (James D. Lantier, of counsel), for Defendant Goswami.

Costello, Cooney Law Firm, Syracuse, NY (Frances A. Ciardullo, of counsel), for Defendant Schwam.

O'Connor, O'Connor Law Firm, Albany, NY (Terence P. O'Connor, of counsel), for Defendant Burke.

Office of Thomas S. Brett, Syracuse, NY (Thomas S. Brett, of counsel), for Defendant Maresca.

Fischer, Bessette Law Firm, Malone, NY (James P. Bessette, of counsel), for Defendant Nicandri.

## MEMORANDUM—DECISION & ORDER

McAVOY, Chief Judge.

Plaintiffs commenced the instant action pursuant to 42 U.S.C. § 1983 asserting violations of his First Amendment rights and the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs also assert state law claims for defamation, tortious interference with business relations, and tortious interference with contract. Presently before the Court is an appeal of two Memorandum–Decision & Orders of Magistrate Judge Ralph W. Smith, Jr., dated October 21, 1998, granting defendants' motion for a protective order and resolving certain discovery disputes.

## I. BACKGROUND

The facts surrounding the present litigation were fully addressed in this Court's prior Memorandum–Decision & Order dated August 8, 1997, familiarity with which is assumed. See Franzon v. Massena Mem'l Hosp., 977 F.Supp. 160 (N.D.N.Y.1997). In brief, Plaintiff Olof Franzon ("Franzon") is a board certified obstetrician/gynecologist who was initially granted hospital privileges at Massena Memorial Hospital ("MMH") in January 1993. In approximately September 1995, Franzon began to openly and publicly advocate for the addition of nurse-midwifery to the services offered by MMH. Franzon also made critical statements at public meetings of the Board of Managers and in the MMH community at large, alleging that MMH refused to grant hospital privileges to nurse-midwifes for anti-competitive reasons. Franzon also made statements at public meetings of the Board of Managers and in the community at large regarding other issues concerning the quality of medical care at MMH. For instance, Franzon publicly questioned MMH's high Caesarean–Section rate, as well as the past and current billing practices engaged in by Defendant Steven Schwam, M.D. and Certified Registered Nurse Anesthetists employed by MMH.

Franzon alleges that shortly after he first suggested that nurse-midwives be allowed to practice and deliver babies at MMH, defendants entered into a conspiracy, and have engaged in a campaign of overt and malicious acts in furtherance of that conspiracy, to silence and excommunicate him from the Massena medical community and the community at large. Franzon alleges that in an attempt to destroy his reputation and career, defendants have justified their actions by maliciously filing false or de minimis complaints in his credentials files. Franzon alleges that in furtherance of this conspiracy, on September 10, 1996, the Massena Medical Executive Committee ("MMEC") refused to recommend renewal of his medical privi-

leges.[1] In accordance with the by-laws of MMH, Franzon requested a Fair Hearing review.

On February 5, 1997, plaintiffs commenced the instant litigation asserting violations of their Constitutional rights as guaranteed by the First and Fourteenth Amendments, and state law claims for defamation, tortious interference with business relations, and tortious interference with contractual relations. By Memorandum–Decision & Order dated August 8, 1997, the Court granted defendants' motion to dismiss, in part, dismissing the First Amendment retaliation claim against defendants Kenneth Maxik and Tae-Sik Choi, and the Fourteenth Amendment equal protection claim in its entirety. The parties, thus, resumed the discovery phase of the litigation.

Various discovery disputes surfaced that required the intervention of the Magistrate Judge. Specifically, plaintiffs' sought discovery of, among other things, documents submitted by defendants in support of their *ex parte* motion to seal; documents concerning medical or midwifery services performed by Bonnie Adler ("Adler") during 1997 and 1998; personnel files of Kenneth Maxik ("Maxik"); peer review records, credentials files and quality assurance files of other physicians at MMH; records of patients not treated by Franzon; minutes of the executive sessions of any hospital committee; information concerning MMH's bad debts; and information concerning the activities of other doctors, both defendants and non-defendants, and how MMH responded to those activities. Defendants objected to these discovery requests asserting that they were irrelevant; based on rumor, speculation, and conjecture; were overly broad and burdensome; were designed to annoy, harass, and embarrass the defendants; and that many of the requested documents are confidential and privileged.

In the first Memorandum–Decision & Order dated October 21, 1998 ("MDO I"), the Magistrate Judge determined that the documents submitted. by the defendants in support of their *ex parte* motion to seal were not relevant and, otherwise, consisted of materials protected by the attorney-client privilege.[2] The Magistrate Judge ordered defendants to submit a description of the documents for further consideration "[i]n the event the submitted documents were not solely attorney affidavits." The Magistrate Judge further held that documents concerning Adler were not relevant because they consisted of services rendered after the denial of Franzon's application for renewal of privileges. With respect to the personnel files of Maxik, the Magistrate Judge concluded that such documents are "blatantly irrelevant" and that the request was made "to embarrass or harass defendant Maxik."

In the second Memorandum–Decision & Order dated October 21, 1998 ("MDO II"), the Magistrate Judge granted defendants' motion for an order protecting them from having to disclose: peer review, quality assurance and credentialing material for any physician other than Franzon; patient charts and records other than patients of Franzon; minutes of any committee meeting not relating to Franzon; information on MMH's bad debts; conflict of interest statements; and physician billing records. The Magistrate Judge then addressed plaintiffs' various document requests and interrogatories and provided specific reasons why defendants need not respond to certain of those discovery demands. *See* Oct. 21, 1998 Memorandum–Decision & Order, at 6–7. Central to much of the Magistrate Judge's determination was his conclusion that "evidence as to how other physicians were treated [is] not necessary to [the] First Amendment retaliation claim." *Id.* at 3 (citing *DiMarco v. Rome Hosp.,* 88–CV–1258 (N.D.N.Y.1992) (McAvoy, C.J.)).

---

1. Pursuant to MMH's by-laws, physicians may be credentialed for no more than two years. Thereafter, the physician may seek reappointment to the medical staff. Here, Franzon reapplied for a two year appointment in 1996. In March 1996, the Board of Managers approved the application for reappointment, but limited it to six months. Upon expiration of the six month period, the MMEC voted to deny Franzon's application for reappointment.

2. By Order dated March 17, 1997, the Court instructed defendants that they may not proceed *ex parte* and ordered that they serve their motion papers upon their adversaries. Defendants' subsequently withdrew that motion.

The Magistrate Judge, therefore, determined that "evidence of disparate treatment to show retaliation or to show pretext ... are [ ] totally irrelevant to [plaintiff's] claims." *Id.* at 4. Plaintiffs now appeal both MDO I and MDO II.

## II. DISCUSSION

Presently before the Court is plaintiffs' appeal of two non-dispositive Orders of Magistrate Judge Ralph W. Smith, Jr., dated October 21, 1998 which granted, in part, defendants' motions for a protective order and determined certain documents not to be relevant to plaintiffs' lawsuit.

█ Pursuant to FED. R. CIV. P. 72(a), a party may file objections to the Order of a non-dispositive issue within ten days of being served. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir.), *cert. denied sub nom, Greenspan, Jaffe, & Rosenblatt v. Sara Lee Corp.*, 498 U.S. 846, 111 S.Ct. 132, 112 L.Ed.2d 100 (1990). "The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law." FED. R. CIV. P. 72(a); *see Hoar*, 900 F.2d at 525. "A magistrate judge's finding 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Labarge v. Chase Manhattan Bank N.A.*, 1997 WL 583122, at *1 (N.D.N.Y. Sept 3, 1997) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)); *Roberson v. AlliedSignal, Inc.*, 1997 WL 222359, at *1 (N.D.N.Y. March 21, 1997).

Plaintiffs allege that the Magistrate Judge committed clear error because the broad rules of discovery cover the documents and interrogatories at issue here and evidence of disparate treatment is a permissible means of demonstrating either retaliatory animus or pretext. Defendants respond that the Magistrate Judge correctly concluded that allegations of disparate treatment are not cognizable under a First Amendment claim. The defendants further assert that plaintiffs have presented no factual basis for the requested discovery, their requests are overbroad, unduly burdensome and/or lack specificity, and, finally, that the requested documents are privileged.

### A. MDO I

█ The Magistrate Judge first addressed whether plaintiffs are entitled to documents submitted to the Court by defendants in support of their *ex parte* motion to seal. The Magistrate Judge reasoned that because the documents were not reviewed or considered by the Court and were returned to defendants, they "have earned no cachet of relevance by having been submitted." The Magistrate Judge further determined that the documents constituted materials protected by the attorney-client privilege and stated that "[i]n the event the submitted documents were not solely attorney affidavits, defendants are to submit a description of the documents supporting the *ex parte* motion for further consideration." These documents may, however, be relevant to the instant litigation independent of the *ex parte* motion. It is unclear whether the Magistrate Judge had the opportunity to review the documents at issue to determine their relevance. In the event that he did not, then the Court modifies the Magistrate Judge's Memorandum–Decision & Order and directs defendants to provide the Magistrate Judge with all materials submitted in support of their *ex parte* motion for an *in camera* review of whether the materials are relevant and constitute privileged materials.

█ With respect to Request No. 4, Maxik's personnel file, plaintiffs object to the Magistrate Judge's determination that these materials are not relevant. However, plaintiffs have failed to demonstrate how these documents would be relevant or how Judge Smith, otherwise, committed clear error. Thus, MDO I is affirmed in that respect.

### B. MDO II

█ In MDO II, the Magistrate Judge granted defendants' motion for an Order protecting them from having to disclose certain materials relating to physicians other than

Franzon on the ground that evidence of disparate treatment is not relevant to a First Amendment retaliation claim.

 It is well-settled that "a plaintiff asserting [that he has been retaliated against for exercising his First Amendment rights] must allege that (i) he has an interest protected by the First Amendment; (ii) the defendant's actions were motivated by or substantially caused by the plaintiff's exercise of that right; and (iii) the defendant's action effectively chilled the exercise of the plaintiff's First Amendment rights." *Connell v. Signoracci,* 153 F.3d 74, 79 (2d Cir.1998) (citations omitted). Stated another way, "[t]o succeed on his First Amendment claims, [plaintiffs] must demonstrate by a preponderance of the evidence that the speech at issue was protected, that [they] suffered an adverse employment action, and that there was a causal connection between the protected speech and the adverse employment action." *Blum v. Schlegel,* 18 F.3d 1005, 1010 (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). To establish a causal connection, plaintiff must demonstrate that engaging in protected speech was a substantial or motivating factor for the adverse employment action. *See Mount Healthy,* 97 S.Ct. at 576. "The question of what actually motivated [the adverse employment action] may, of course, be determined by circumstantial evidence." *Conklin v. Lovely,* 834 F.2d 543, 546–47 (6th Cir.1987); *see Montalvo v. United States Postal Serv.,* 1996 WL 935448, at *1 (2d Cir. Apr.19, 1996). As with Title VII cases, the causal connection between the First Amendment speech and the alleged retaliatory conduct may be shown directly through evidence of retaliatory animus aimed at a plaintiff by the defendant, or indirectly through evidence such as disparate treatment of fellow employees who engaged in similar conduct. *See Bernheim v. Litt,* 79 F.3d 318, 323 (2d Cir.1996) ("[C]laims of retaliation are commonly brought under the First Amendment ... and may also be brought under Title VII."); *DeCintio v. Westchester County Medical Center,* 821 F.2d 111, 115 (2d Cir.) (citations omitted) (discussing proof of causal connection in Title VII context), *cert. denied,* 484 U.S. 965, 108

S.Ct. 455, 98 L.Ed.2d 395 (1987). Because the Federal Rules of Civil Procedure permit discovery of information that reasonably will lead to the discovery of admissible evidence, *United States v. Kross,* 14 F.3d 751, 754 (2d Cir.), *cert. denied,* 513 U.S. 828, 115 S.Ct. 99, 130 L.Ed.2d 48 (1994); Fed.R.Civ.P. 26(b)(1), plaintiffs are entitled to obtain discovery of that which would tend to support their claim of retaliation. This may well include evidence demonstrating that he was treated differently than other employees because of his alleged protected speech. *See Graham v. Henderson,* 89 F.3d 75, 81 (2d Cir.1996) (comparing treatment of one prisoner with that of other prisoners in determining causal connection in First Amendment retaliation claim); *Tao v. Freeh,* 27 F.3d 635 (D.C.Cir. 1994) (comparing treatment of employees to determine whether plaintiff had suffered adverse employment action and, arguably, to establish causal connection).

The Court is aware that, in a similar case, it has previously held that "[e]vidence that other physicians were treated differently or similarly is not necessary to the success of Plaintiff's claim." *DiMarco v. Rome Hosp.,* 88–CV–1258 (Nov. 27, 1992). That decision, of course, was limited to the particular facts of that case. The plaintiff in that case did not allege that the retaliation was evidenced by the disparate treatment he received after having engaged in protected speech. Indeed, the plaintiff in *DiMarco* focused solely on conduct directed at him, without any reference to or comparison with others similarly situated. Here, however, plaintiffs' Complaint specifically alleged that defendants' retaliation is evidenced by the disparate treatment he has received for exercising his First Amendment rights compared to other physicians and, in the alternative, that evidence of disparate treatment would tend to establish that any legitimate reasons proffered by defendants for their actions are a pretext. Plaintiffs, therefore, are entitled to obtain discovery of evidence that would tend to prove their allegations. This, of course, does not mean that such materials will be admissible in evidence.

**534**

## III. Conclusion

For the foregoing reasons, MDO I is MODIFIED, in part, and otherwise AFFIRMED. With respect to MDO II, to the extent the Magistrate Judge granted defendants' motion for a protective order on the ground that evidence of disparate treatment was irrelevant to the First Amendment retaliation claim, MDO II is REVERSED and REMANDED for further consideration consistent with this opinion. In all other respects, MDO II is AFFIRMED.

**IT IS SO ORDERED**