**Olof FRANZON, M.D. and Women's Medical & Surgical Health Care, P.C., Plaintiffs,**

v.

**MASSENA MEMORIAL HOSPITAL, Board of Managers of Massena Memorial Hospital, Medical Executive Committee of Massena Memorial Hospital, Jayant J. Jhaveri, M.D., James B. Watson, Bedros Bakirtzian, Christine Rowe–Button, M.D., Sateesh**

K. Goswami, M.D., Steven Schwam, M.D., Melchiore L. Buscemi, M.D., Edward Burke, M.D., Kenneth Maxik, M.D., Tae–Sik Choi, M.D., Michael Maresca, M.D., Lois Nicandri, and Tina Corcoran, Defendants.

No. 97–CV–0150.

United States District Court,
N.D. New York.

March 23, 2000.

Mitchell G. Mandell, Pollack, Green Law Firm, New York City, for Plaintiffs.

Donald P. Ford, Jr., Thuillez, Ford Law Firm, Albany, NY, Mae A. D'Agostino, Christine K. Krackeler, D'Agostino, Krackeler Law Firm, Menands, NY, Stephen T. Helmer, Mackenzie, Smith Law Firm, Syracuse, NY, Alvin O. Sabo, Donohue, Sabo Law Firm, Albany, NY, James D. Lantier, Smith, Sovik Law Firm, Syracuse, NY, Frances A. Ciardullo, Fager, Amsler Law Firm, Syracuse, NY, Terence P. O'Connor, O'Connor, O'Connor Law Firm, Albany, NY, Thomas S. Brett, Office of Thomas Brett, Syracuse, NY, James P. Bessette, Fischer, Bessette Law Firm, Malone, NY, Mark W. Blanchfield, Bouck, Holloway Law Firm, Albany, NY, for Defendants.

## MEMORANDUM—DECISION & ORDER

McAVOY, Chief Judge.

## I. BACKGROUND

The instant matter has been the subject of several prior Memorandum—Decision & Orders ("MDOs"), *see Franzon v. Massena Memorial Hosp.*, 189 F.R.D. 220 (N.D.N.Y.1999); *Franzon v. Massena Memorial Hosp.*, 32 F.Supp.2d 528 (N.D.N.Y. 1998) ("*Franzon II*"); *Franzon v. Massena Memorial Hosp.*, 977 F.Supp. 160 (N.D.N.Y.1997), and the more recent Decisions & Orders dated August 9, 1999, October 19, 1999, and October 26, 1999, *Franzon v. Massena Memorial Hosp.*, 97–CV–150, familiarity with which are assumed. The Court will not now rehash the facts or procedural history surrounding this litigation. Rather, the reader is referred to the prior decisions.

In short, as is pertinent to the instant motion for summary judgment, Plaintiff has commenced the instant litigation against Defendant Tae–Sik Choi, M.D. ("Choi,"), and other Defendants, alleging that Choi participated with other Defendants in a conspiracy to deprive him of his First Amendment rights. Specifically, Plaintiff claims that Defendants retaliated against him for speaking in favor of offering nurse-midwifery services at Massena Memorial Hospital ("MMH") and speaking out about the high rate of Caesarian section deliveries at MMH. Plaintiff alleges that Defendants have engaged in a campaign of overt and malicious acts to silence him consisting of: (1) making defamatory statements about his competence as a physician; (2) refusing to provide patients with insurance referrals; (3) maliciously filing false or de minimis complaints in his credentials files; and (4) refusing to renew his medical privileges at the MMH. Plaintiff also asserts claims against Choi for defamation and the tortious interference with business relations.

Presently before the Court is Defendant Choi's motion for summary judgment pursuant to FED.R.CIV.P. 56 seeking dismissal of the Complaint against him in its entirety.

## II. DISCUSSION

### A. Summary Judgment Standard

The standard for summary judgment is well-settled and need not be restated here. This Court has set forth the appropriate summary judgment standard in several reported decisions, *see, e.g., Hoffman v. County of Delaware*, 41 F.Supp.2d 195, 205 (N.D.N.Y.1999), *aff'd*, 205 F.3d 1323 (2d Cir.2000), and will apply that same standard to Choi's pending motion.

### B. First Amendment

Plaintiff's Complaint alleges that Choi, along with the other Defendants, engaged in a conspiracy to deprive him of his First Amendment rights. Specifically, Plaintiff contends that Choi and the others retaliated against him for engaging in protected

speech. Choi moves for summary judgment on the ground that he was not a state actor and, thus, cannot be held liable pursuant to 42 U.S.C. § 1983. Plaintiff opposes the motion for summary judgment arguing that Choi conspired with the other Defendants, who were state actors, to deprive him of his First Amendment rights and, accordingly, his actions can be considered to have been taken under color of state law.

■ It hardly need be said that claims pursuant to 42 U.S.C. § 1983 have two "essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir.1998). For purposes of the instant motion, only the first element—whether Choi was acting under color of state law—is at issue.[1]

■ Ordinarily, "substantive claims under § 1983 are ... brought only against state officials." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir.1995), *cert. denied*, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996). However, an ordinary citizen who conspires with a state agent to violate a plaintiff's civil rights may also be liable. *See Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998); *Singer*, 63 F.3d at 119. Thus, assuming for purposes of this motion that Plaintiff has suffered a constitutional injury, the question is whether there are sufficient facts before the Court from which a jury reasonably could conclude that Choi conspired with Defendants to retaliate against Plaintiff for the exercise of his First Amendment rights.

■ "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to

act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999). "While conclusory allegations of a § 1983 conspiracy are insufficient, ... such conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence." *Id.* (internal quotations and citations omitted). The Second Circuit has instructed that:

[T]o state a claim of conspiracy under § 1983, the complaint must contain more than mere conclusory allegations.... And while a plaintiff should not plead mere evidence, he should make an effort to provide some details of time and place and the alleged effect of the conspiracy. Thus, complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.

*Dwares v. City of New York*, 985 F.2d 94, 99 (2d Cir.1993) (internal citations and quotations omitted).

Choi moves for summary judgment claiming that he did not participate in any alleged conspiracy and that there is no evidence suggesting that he acted in furtherance of any such conspiracy. In support of his motion, Choi submits portions of Plaintiff's deposition testimony wherein Plaintiff states that (1) Choi was not a member of the Medical Executive Committee ("MEC") that recommended that Plaintiff's hospital privileges not be renewed; (2) Choi was not a member of the credentials committee that recommended that Plaintiff's hospital privileges not be renewed; (3) he is unaware of any input Choi had into the recommendation of the credentials committee; (4) he is unaware

---

1. Choi does not argue that Plaintiff did not suffer a constitutional injury. Accordingly, the Court will not now address this issue, but will focus solely on whether Choi was a state actor within the purview of 42 U.S.C. § 1983.

of any instance when Choi filed any complaints against him; (5) Choi did not testify against him at the fair hearing; (6) Choi did not provide expert testimony on any of the patient charts discussed at the fair hearing; (7) Choi did not provide expert testimony whether Lynn Wheeler, a nurse midwife, exceeded the delineation of her privileges; (8) there was no criticism of Plaintiff at the fair hearing by Choi; (9) none of the charges brought by the MEC dealt with Choi; and (10) Choi was not involved in the MEC's recommendation with respect to, or development of, the nurse midwifery protocol. *See* June 8, 1998 Franzon Dep. at 582–93. Choi also submits an affidavit stating that he was never a member of any hospital board or committee that considered Plaintiff's reappointment, he did not have any input into the preparation or filing of any charges by the MEC against Plaintiff or the decision not to renew his privileges, and he never filed any charges or complaints against Plaintiff. *See* July 16, 1999 Choi Aff. at ¶¶ 4–7. The minutes of the various hospital committees submitted by Choi supports his contentions. *See* Nov. 15, 1999 Ford Aff.Exs. C, D, K. This evidence offered by Choi is sufficient to sustain his burden on summary judgment demonstrating the absence of a genuine issue of fact as to the existence of a conspiracy to deprive Plaintiff of his constitutional rights. It, therefore, is incumbent on Plaintiff to present sufficient evidence to support the inference that an improper conspiracy took place. *See Scotto*, 143 F.3d at 114.

In opposition to Choi's motion, Plaintiff contends that: (1) Choi and the other Defendants had a unity of purpose and that Choi stood to benefit from the conspiracy because he was the Chief of Obstetrics and MMH's only other OB/GYN practitioner; (2) Choi and Plaintiff had a hostile work relationship; (3) Franzon made public statements regarding Choi's "inexplicable and outrageous" Caesarian section rate, *see* Pl.Mem. of Law at 13; (4) Choi, as Chief of Obstetrics at MMH, embarked on a "surreptitious effort to recruit Franzon's replacement ... well before the determination by the Hospital to revoke Franzon's privileges," Pl.Mem. of Law at 13; (5) MMH granted hospital privileges to the "replacement physician" the very same day the MEC finalized the "revocation of Franzon's privileges," Pl.Mem. of Law at 13; (6) Choi could not have recruited the "replacement physician" unless he knew that Plaintiff's privileges would not be renewed; (7) MMH granted these privileges despite the fact that the "OB/GYN practice at MMH could barely support two practitioners," *id.;* (8) Choi defamed Plaintiff days after the MEC refused to renew his privileges; (9) "several months earlier, in response to a comment by Franzon concerning Choi's treatment of one of Franzon's patients, Choi threatened to 'kick [Franzon's] butt,'" *See* Pl.Mem. of Law at 14 (alterations in original); (10) Choi expressed hostility toward the nurse midwifery program; and (11) during Franzon's fair hearing, Choi had a secret meeting with his alleged co-conspirators, Dr. Schwam and the Hospital's former Chief Executive Officer, wherein they purportedly stated that they would do anything to get rid of Plaintiff.

First, while there is clear evidence of dislike between Choi and Plaintiff (*e.g.* the dispute over the number of Caesarian deliveries, Choi's allegedly stating that he was going to "kick [Franzon's] butt" arising out of a dispute over care provided to a particular treatment and Franzon's notation in the patient's record that Choi provided inappropriate care, and other hostility between the two), that evidence alone does not necessarily rise to the level necessary to support a finding of a conspiracy between Choi and the other Defendants to violate Plaintiff's rights. *See Dykes v. Hosemann*, 743 F.2d 1488, 1498 (11th Cir. 1984).

Second, the evidence overwhelmingly suggests that Choi took no role in the decision not to renew Plaintiff's hospital privileges. Plaintiff is unable to point to ·

any admissible evidence that Choi had any influence over, or participation in, the decision not to renew his privileges.

■ Third, the fact that Choi stood to benefit from the failure to renew Plaintiff's hospital privileges, standing alone, is insufficient to support an inference of the existence of a conspiracy to violate Plaintiff's constitutional rights. While it may be evidence of motive and may be circumstantial evidence as to the existence of a conspiracy, *see Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,* 187 F.3d 229, 239 (2d Cir.1999) ("As is true in criminal conspiracies, agreements in civil conspiracies will not easily be shown by direct evidence, but may be inferred from circumstantial evidence."), it does not suggest that Choi acted upon any such motive. *See United States v. Macklin,* 927 F.2d 1272, 1277 (2d Cir.1991) (Stating, in the criminal context, that "to prove membership in a conspiracy, there must be evidence of purposeful behavior designed to further that conspiracy.") (Internal quotations and citation omitted), *cert. denied,* 502 U.S. 847, 112 S.Ct. 146, 116 L.Ed.2d 112 (1991). Similarly, any evidence of Choi's hostility towards a nurse-midwifery program, in and of itself, is probative of little more than his disapproval of the program. Choi's hostility does not tend to suggest that he, therefore, agreed with the other Defendants to retaliate against Plaintiff. Choi, as one of two physicians in obstetrics at MMH, was entitled to his opinion on permitting nurse-midwives to participate in labor and delivery.

Fourth, Choi's alleged actions in defaming Plaintiff, *see* discussion *infra,* while evidence of the hostility between the two, is not, standing alone, evidence of a conspiracy. Again, this is not probative of whether Choi agreed with state actors to retaliate against Plaintiff for speaking out on an issue of public concern. There simply is no evidence that Choi engaged in this conduct in furtherance of a joint scheme with the alleged co-conspirators.

■ Fifth, there is the allegation that Choi had a meeting with several other Defendants wherein they purportedly stated that they would do anything to get rid of Plaintiff. While this evidence appears to be the "smoking gun," it is insufficient to overcome Defendant's motion for summary judgment because it is not admissible in form. *SEE* FED.R.CIV.P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence."); *see also Sarno v. Douglas Elliman–Gibbons & Ives, Inc.,* 183 F.3d 155, 160 (2d Cir.1999); *Nora Beverages, Inc. v. Perrier Group of America, Inc.,* 164 F.3d 736, 746 (2d Cir.1998) ("On a summary judgment motion, the district court properly considers only evidence that would be admissible at trial."); *Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir.1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."). To prove that this meeting took place and that Choi made these statements, Plaintiff submitted the affidavit of his wife, Astrid Franzon, who stated that:

> [i]n the course of my conversation with Lynn Maxwell, Lynn Maxwell stated that, in February 1997, while a waitress at Viola's ... the defendant Choi and two other defendants, Steven Schwam, M.D. and James B. Watson, with their respective wives, met for dinner in a private room.... Lynn Maxwell advised me that, while she was serving dinner to the Choi group in their private room, she overheard them tell Watson, in substance, that *they would do anything to "get rid of him for you."* Lynn Maxwell stated that, although they did not refer to Dr. Franzon by name, she understood from all the circumstances, including that fact that Dr. Franzon was at the time appealing the denial of his privileges at MMH, that Choi and Schwam were speaking about "getting rid" of Dr. Franzon from MMH.

Dec. 23, 1999 Astrid Franzon Aff. at ¶¶ 3–4 (emphasis in original). Of course, this affi-

davit suffers from double hearsay—Astrid Franzon is recounting in an affidavit an out of court conversation she had with Lynn Maxwell (the first level of hearsay) who, in turn, was recounting an out of court conversation she overheard between Choi, Schwam and Watson (the second level of hearsay). *See Finnegan v. Board of Educ. of the Enlarged City School Dist. of Troy,* 30 F.3d 273, 274 (2d Cir.1994) (double hearsay inadmissible on motion for summary judgment). Even if the Court believed the statements by Choi and Schwam to be admissible as an admission against a party opponent (*i.e.* an admission of a conspiracy), thereby overcoming one hearsay hurdle, the second hearsay hurdle renders this portion of the affidavit inadmissible. *See Sarno,* 183 F.3d at 160. Plaintiff provided no sworn statement from any of the participants to the Choi conversation or from Maxwell herself.

■ Sixth, Choi's actions in recruiting another obstetrician in light of an apparent lack of need for another physician in that specialty is more troubling. Defendants contend that this "evidence" is quickly dispelled of because MMH had an "open" medical staff, which means that any physician could apply for and be granted privileges regardless of the number of physicians already on staff. According to Defendant, the granting of privileges to this other physician, Dr. Douglas, did not preclude Plaintiff from receiving privileges and, thus, Douglas did not "replace" Plaintiff.

Looking at the evidence in the light most favorable to Plaintiff, the evidence surrounding the hiring of Douglas could tend to suggest that Choi was aware that Plaintiff's privileges would not be renewed and, thus, Choi was privy to the internal politics at MMH. Of course, mere knowledge of the existence of unconstitutional conduct or association with the alleged conspirators alone is insufficient to establish membership in a conspiracy. *See United States v. Macklin,* 927 F.2d 1272, 1277 (2d Cir.) (Stating, in the criminal context, that: "[A]bsent evidence of purposeful behavior, mere presence at the scene of a crime, even when coupled with knowledge that a crime is being committed, is insufficient to establish membership in a conspiracy; and mere association with conspirators is similarly insufficient.") (internal quotations and citations omitted), *cert. denied,* 502 U.S. 847, 112 S.Ct. 146, 116 L.Ed.2d 112 (1991). Rather, there must be evidence of some purposeful conduct designed to further the alleged conspiracy. *See id.*

Although MMH may have had an "open staff," the timing of Douglas' recruitment together with the apparent lack of need for another obstetrician in the area could suggest that Choi was attempting to find another physician to replace Plaintiff, even though providing hospital privileges to Douglas would not, *a fortiori,* preclude Plaintiff from also having hospital privileges. Evidence that Choi acted to find another physician to fill the void that would be created at MMH by the non-renewal of Plaintiff's privileges could supply the affirmative act necessary to support the finding of participation in a conspiracy. Although it is a close call, the Court finds that, considering this evidence and the totality of the circumstances described above in the light most favorable to Plaintiff, there is a genuine issue of fact whether Choi was a participant in the alleged conspiracy. Accordingly, Choi's motion for summary judgment on this ground is denied.

## C. Defamation

Choi also moves for summary judgment seeking dismissal of the defamation cause of action asserted against him. This cause of action arises out of a telephone call placed by Choi to Cynthia Harper ("Harper"), a former receptionist for and patient of, Choi. On or about February 23, 1996, Harper wrote a letter to Choi in support of Plaintiff requesting that Choi "reconsider [his] position [with respect to Franzon] . . . and give our women a choice in their

health care." Dec. 22, 1999 Harper Aff. Ex. A. Several days later, Choi telephone Harper regarding Franzon. During the course of that telephone conversation, Choi purportedly stated that Plaintiff: (1) "jeopardizes patient['s] welfare;" (2) "makes mistakes;" (3) "almost lets [patients] bleed to death;" and (4) neglects patients in need of immediate medical attention. *See* Harper Aff.Ex. B. Choi moves for summary judgment claiming that these assertions are true or, in the alternative, are non-actionable expressions of opinion.

 Under New York law, the law applicable here, "[t]here are, generally speaking, four elements necessary to establish a prima facie case of slander: (1) an oral defamatory statement of fact, (2) regarding the plaintiff, (3) published to a third party by the defendant, and (4) injury to the plaintiff." *Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 61 (2d Cir. 1993). "The fourth element is presumed when the defamatory statement takes the form of slander per se." *Id.* at 61–62. In order to comport with the First Amendment's guarantee of the right to free speech, a defamation Plaintiff also must prove the requisite degree of fault, which depends on the status of the alleged libeled party. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 3010, 41 L.Ed.2d 789 (1974) ("[S]o long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual."); *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 720, 726, 11 L.Ed.2d 686 (1964) ("[L]ibel can claim no talismanic immunity from constitutional limitations. It must be measured by standards that satisfy the First Amendment."); *see also Huggins v. Moore*, 94 N.Y.2d 296, 704 N.Y.S.2d 904, 726 N.E.2d 456 (1999).

Because the applicable standard and ensuing discussion are dependent upon Plaintiff's status as a private or public figure, the Court will first address that issue.

Choi argues that Plaintiff is a public figure and, therefore, must ultimately prove that Choi acted with actual malice in making the alleged defamatory statements. Plaintiff does not directly oppose this argument stating instead that this argument is a red herring and that intent is generally a question of fact for the jury. However, Plaintiff provides no further legal or factual support for his contention that the actual malice standard should not apply here. Nonetheless, the Court will independently review Plaintiff's legal status with respect to his defamation claim.

 In ascertaining whether a defamation plaintiff is a public figure, the Second Circuit has set forth a four part test:

A defendant must show the plaintiff has: (1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media.

*Contemporary Mission, Inc. v. New York Times Co.*, 842 F.2d 612, 617 (2d Cir.1988). Applying these factors, for the following reasons, the Court finds that Plaintiff is a limited public figure for purposes of the instances alleged in the Complaint and, thus, has the burden of demonstrating both that the alleged statements are false and that Choi acted with knowledge of falsity or a reckless disregard for the truth. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 111 S.Ct. 2419, 2429, 2432, 115 L.Ed.2d 447 (1991); *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783 (1986).

First, the evidence demonstrates that Plaintiff successfully invited public attention to his views in an effort to influence others prior to the incident that is the

subject of litigation. It appears from the evidence that the issue of granting privileges to nurse midwives at MMH was a hotly contested issue in the Massena area and one in which Plaintiff took an active role. *See* Compl. at ¶ 28 ("In or about September 1995, Franzon began to openly and publicly advocate for the addition of nurse-midwifery services offered by the Hospital.... Franzon was also outspoken about other issues of public concern which relate to the Hospital"); Compl. at ¶ 37 ("Franzon also made statements at public meetings of the Board of Managers and in the Massena community at large that he believed that the Hospital refused to grant hospital privileges to nurse-midwives for anti-competitive reasons."); Compl. at ¶ 41 ("Franzon made statements ... in the Massena community at large regarding ... issues concerning the quality of medical care at the Hospital"); Compl. at ¶ 42 ("Franzon had, in the past, publicly questioned the Hospital's abnormally high C–Section rate, as well as the past and current billing practices."); Compl. at ¶ 44 ("Franzon spoke in a public forum about these health care issues."); Compl. at ¶ 45 ("Franzon[ ] open[ly] critici[zed][the] Hospital practices and medical care."). Plaintiff attempted to garner public support for the granting of hospital privileges to a nurse midwife on his staff. In addition to the allegations contained in the Complaint, the significant media coverage surrounding the issue further evidences that Plaintiff invited public attention to his views in an attempt to influence others. *See* Nov. 15, 1999 Ford Aff.Ex. Q.

Second, Plaintiff voluntarily injected himself into the controversy surrounding the issue of granting privileges to nurse midwives at MMH and the non-renewal of his hospital privileges. *See Contemporary Mission,* 842 F.2d at 618. This also is evidenced by the extensive media coverage surrounding the nurse-midwifery issue and the instant litigation. *See* Nov. 15, 1999 Ford Aff.Ex. Q. ("MMH Chief Executive Officer James B. Watson and members of the board of managers have been largely silent on the nurse-midwife issue, which has been made public by Dr. Olof Franzon."). In addition, the issue of nurse-midwifery and, in particular, the renewal of Plaintiff's privileges was a campaign issue among candidates for Town Supervisor and Town Councilmen in Massena. *See* Nov. 15, 1999 Ford Aff.Ex. R ("The Democrats had focused their campaign on three major issues ... [one of which was] questioning the credentialing process that resulted in Dr. Olof Franzon losing his rights to practice at [MMH]."). The evidence reveals that Plaintiff actively participated in politicizing these issues. *See id.* ("Supporters of Dr. Olof Franzon suggested last night's sweep by the Democratic candidates is proof that their concerns about the hospital board's decision to deny the obstetrician privileges ... is resonating throughout the community.... Franzon watched the vote tally at the Democratic headquarters.... 'This community has finally spoken out loud and clear. Finally the Democratic Party stepped forward and listened. The voters have given this town board a clear mandate to pursue what they have spoken about,' Franzon said.") ("[Town Supervisor] Hazelton and Franzon squared off in a testy exchange.").

Third, the evidence further demonstrates that Plaintiff has assumed a level of prominence in the public controversy. It is clear that Plaintiff was one of the leading forces behind the nurse-midwife movement in Massena and the community recognized him as such. *See* Nov. 15, 1999 Ford Aff.Ex. Q. (describing Plaintiff as "the obstetrician leading the charge to have the hospital expand its services."). Plaintiff's prominence is evidenced by, for example, letters to the editor and other newspaper articles discussing the nurse-midwifery issue and recognizing Plaintiff as a central figure in the debate. *See id.* Similarly, Plaintiff's status as the center of an election issue further demonstrates his prominence in the public controversy. *See* Nov. 15, 1999 Ford.Aff.Ex. R.

Fourth, the newspaper articles annexed to the Ford Affidavit demonstrate that Plaintiff had maintained continuing and regular access to the media. *See* Nov. 15, 1999 Ford Aff.Exs. Q, R. There are numerous articles in which Plaintiff and/or his supporters were quoted with respect to his hospital privileges and the granting of privileges to nurse midwives.

Accordingly, the Court finds that Plaintiff is a limited public figure and, therefore, in order to sustain his defamation cause of action against Choi, must demonstrate both that the alleged defamatory statement are false and that Choi spoke with actual malice—that is, that Choi spoke with knowledge of falsity or a reckless disregard for the truth. *See Flamm v. American Ass'n of University Women,* 201 F.3d 144, 148; *Freeman v. Johnston,* 84 N.Y.2d 52, 56, 614 N.Y.S.2d 377, 637 N.E.2d 268 (1994).

■ Choi moves for summary judgment asserting that "a review of the facts developed in this case reveal that summary judgment in Dr. Choi's favor is appropriate because the statements are true." Def.Mem. of Law at 7. Choi argues that because there was an incident whereby Plaintiff cared for a patient who had a significant loss of blood and remained very anemic despite receiving two units of blood, his statements to Harper are true. Choi also maintains that this case was reviewed by MMH's quality assurance program, which found that the incident was avoidable. This evidence satisfies Choi's burden on summary judgment of demonstrating an absence of a genuine issue of material fact. While truth, or substantial truth, unquestionably is an absolute defense to a defamation claim, *see Malik v. Carrier Corp.,* 202 F.3d 97, 109 (2d Cir. 2000), in a suit such as this one involving a public figure plaintiff regarding a matter of public concern, "the plaintiff ... bear[s] the burden of proving falsity." *Flamm,* 201 F.3d 144, 149; *The Law Firm of Daniel P. Foster, P.C. v. Turner Broadcasting System,* 844 F.2d 955, 959 n. 5 (2d Cir.), *cert. denied,* 488 U.S. 994, 109 S.Ct. 559, 102 L.Ed.2d 585 (1988); *see also Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) ("When ... the plaintiff is a public figure, he cannot recover unless he proves by clear and convincing evidence that the defendant published the defamatory statement with actual malice, i.e., with 'knowledge that it was false or with reckless disregard of whether it was false or not.' ") (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964)). Accordingly, the onus is on Plaintiff to present evidence, admissible in form, from which a fair-minded jury could reasonably concluded that the alleged defamatory statements were false and that Choi acted with constitutional malice.

Plaintiff, who was fully aware that Defendant was seeking summary judgment on this ground, *see* Pl.Memo. of Law at 15 ("In his motion, Choi seeks summary judgment on plaintiffs' defamation claim, arguing that his statements are either true or matters of opinion."), made no effort to demonstrate a genuine issue of fact whether the alleged defamatory statements are, indeed, false. In fact, Plaintiff never discussed the truthfulness (or falsity) of Choi's statements. Accordingly, this Cause of Action must fail.

Moreover, assuming Plaintiff has identified actionable statements of fact and that such statements are false, he has failed to raise a genuine issue of fact whether Choi spoke knowing that the statements were false or with a reckless disregard for the truth. While Plaintiff correctly argues that intent generally is a question of fact for the jury and the evidence discussed *supra* may tend to suggest common law malice (that is, spite or ill will), he has proffered no evidence from which a fair minded jury could reasonably infer that Choi knew his comments to be false or recklessly disregarded the truth of those statements. Rather, the evidence suggests that Choi spoke with respect to a

particular patient under Plaintiff's care who experienced a significant loss of blood. In light of this, Choi could have reasonably believed his comments to be true and, based on the record before the Court, no fair-minded jury could reasonably conclude otherwise. Accordingly, Plaintiff's defamation claim against Choi must be dismissed.

## D. Tortious Interference with Business Relations

Finally, Choi moves for summary judgment seeking dismissal of Plaintiff's claim for the tortious interference with business relations. Plaintiff's Complaint alleges that Choi interfered with the business relations between Plaintiff and his patients because: (1) Choi refused to provide the necessary insurance referrals; and (2) Choi made defamatory statements to Plaintiff's patients, prospective patients and the community at large regarding his ability to practice medicine. Choi argues that Plaintiff has failed to identify any relationship with third parties (*i.e.* patients) that has been adversely affected by conduct allegedly attributable to Choi. Plaintiff, on the other hand, contends that "Choi was a member of the conspiracy to retaliate against [him], and personally defamed the plaintiff thereby interfering with plaintiff's business. Besides his own efforts, Choi is responsible for all foreseeable action in furtherance of the conspiracy."

■■■■ In New York:

A defendant becomes liable for tortious interference with a plaintiff's business relations when four conditions are met: (1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured.

*Goldhirsh Group, Inc. v. Alpert,* 107 F.3d 105, 108 (2d Cir.1997). "To state a claim for tortious interference with prospective business relations, a valid contract is not necessary." *See Hannex Corp. v. GMI, Inc.,* 140 F.3d 194, 205 (2d Cir.1998). "[A] plaintiff can recover if that plaintiff can prove that the defendant tortiously interfered with 'a continuing business or other customary relationship not amounting to a formal contract.'" *Id.* (quoting Restatement (Second) of Torts § 766B cmt. c (1979)).

■■■ First, Plaintiff is unable to satisfy the first element of his tortious interference with business relations claim because he fails to point to any business relationships with which Choi interfered. Second, Plaintiff has not presented any evidence tending to support his allegations that Choi refused to provide the necessary insurance referrals or made defamatory statements regarding his ability to practice medicine. Plaintiff presents no evidence that Choi was involved with, or had any control over, the alleged refusal to provide insurance referrals. Further, as previously discussed *supra,* Plaintiff failed to present sufficient evidence from which a jury could reasonably conclude that Choi made any false statements of fact regarding Plaintiff's abilities has a physician. Without any proof of the conduct alleged in the Complaint, Plaintiff cannot satisfy the third element of his tortious interference with business relations claim which requires proof of intentional acts aimed at interfering with a business relationship.

Third, having failed to identify a business relationship with which Choi allegedly interfered, Plaintiff cannot satisfy the fourth element which requires proof of an injury to such a business relationship. For these reasons, this Cause of Action also must be dismissed.

## III. CONCLUSION

For the foregoing reasons, Defendant Choi's motion for summary judgment is GRANTED IN PART insofar as the defa-

mation and tortious interference with business relations Causes of Action against him are DISMISSED. In all other respects, Defendant Choi's motion for summary judgment is DENIED.

**IT IS SO ORDERED.**