Ruth DANIELS

v.

Susan TOWNSLEY, Edmund Mosca, David Perroti, John Torrenti.

No. 3:99CV197(JBA).

United States District Court, D. Connecticut.

Jan. 23, 2001.

Norman A. Pattis, Williams & Pattis, New Haven, CT, Tara J. Galbo, Votre & Associates, New Haven, CT, Kenneth A. Votre, Votre & Associates, New Haven, CT, for plaintiff.

John K. McDonald, Kernan & Henry, Waterbury, CT, for Susan Townsley, Edmund Mosca and David Perroti.

Michael E. Riley, O'Keefe, Phelan & Jackson, Hartford, CT, John K. McDonald, Kernan & Henry, Waterbury, CT, for John Torrenti.

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOC. # 30]

ARTERTON, District Judge.

On September 17, 1998, plaintiff Ruth Daniels was allegedly assaulted by defendant John Torrenti while seeking signatures for a petition regarding town expenditures on a new development project. According to Daniels, although she reported this incident to the police and wanted charges filed against Torrenti, defendants Officer David Perroti and Chief of Police Edmund Mosca of the Old Saybrook Police Department, together with defendant Susan Townsley, the Old Saybrook First Selectwoman, willfully refused to protect her from Torrenti as part of a concerted campaign to chill the exercise of her First Amendment rights in violation of 42 U.S.C. § 1983. Daniels also asserts state law claims of negligent and/or intentional assault and battery against defendant Torrenti. Defendants Townsley, Mosca and Perroti have now moved for summary judgment.

### I. Factual Background[1]

Chief Mosca has been a long-time political opponent of Daniels. Daniels Aff. ¶¶ 11, 15. Townsley and Daniels were also political opponents, and Townsley had previously denied petitions from Daniels seeking hearings on the Saybrook Point development project. *Id.* at ¶ 4. The petition Daniels was circulating at the Old Saybrook

---

1. The following facts are taken from Defendant's Local Rule 9(c) Statement of Undisputed Facts and attached exhibits [Doc. # 32] and the Affidavits of Jean Castagno and Ruth Daniels and other exhibits attached to Plaintiff's Memo. in Opp. to S.J. [Doc. # 38].

Although Daniels did not submit a statement of material facts in dispute, as required by Local Rule 9(c)(2), the Court nonetheless has considered the exhibits to plaintiff's opposition to summary judgment where they raise issues of disputed fact.

dump when assaulted by Torrenti was her third petition regarding Saybrook Point.

According to Daniels, while at the dump on September 17, 1998, Torrenti approached Daniels, screamed and swore at her, forced her against her car, tore the petition from her hand, crumpled it, pushed it against her mouth while screaming at her to open her mouth and threatened that " 'I'll shut you up for the last time.' " *Id.* at ¶ 5. Following the assault, Daniels was assisted by Claire Porzio, who came running when she heard the yelling.

Daniels then went to Middlesex Cardiology for treatment. She described the events to Officer Perroti while at Middlesex Cardiology immediately after the incident. *Id.* at ¶ 9. However, according to Daniels, the report Perroti prepared did not comport with Daniels' version of the events. *Id.* at ¶¶ 11, 14. The report prepared by Perroti states that Daniels said Torrenti never touched her, and that she said she wanted to forget about the incident. The police report also states that Daniels threatened to sue the town, Mosca and Perroti if Torrenti was not prosecuted, which Daniels denies ever saying.

Perroti then questioned Ronald Sullivan, a possible witness, at the transfer station. Sullivan told Perroti that he had seen Torrenti rip the paper from Daniels' hands and yell at her, but that he had not heard Torrenti tell Daniels to open her mouth so she could eat the petition. Later that same day, Perroti spoke to Torrenti, who admitted taking the petition, ripping it, and throwing it into Daniels' trunk. Torrenti stated that he never told Daniels to open her mouth so he could make her eat the petition. Perroti then gave Torrenti a verbal warning not to engage in this type of behavior in the future, and Torrenti indicated that he fully understood the warning and was sorry for the inconvenience he had caused. *See* Perroti Aff. ¶¶ 8–15. Tor-

renti has since written a letter of apology to Daniels. *See* Daniels Aff. ¶ 12; Pl.'s Ex. C.

After meeting with Torrenti, Perroti went to Daniels' residence to discuss his investigation with her and to take her statement. Perroti's Supplementary Report dated October 17, 1998 (Def.'s Ex. K) indicates that "Daniels stated she was too upset and did not want to give one and further stated that she wanted to forget about the incident." The Incident Report completed by Perroti on September 17, 1998 (Def.'s Ex. G) states that

> I responded to Daniels [sic] house to advise her of the situation. She became very angry at this officer and stated she, "was going to get Viggiano, meaning Torrenti." She went onto [sic] state that I was protecting Torrenti because I was, "involved with the Republican Party." I advised Daniels that I am not and that I reside in the town of Westbook. Daniels stated she did not want to talk about this anymore because she was getting upset. She stated, "As long as I live in a democratic state, I will voice my opinion. No one will threaten me." I asked Daniels for the name and phone number of the lady she stated had witnessed this incident but she did not give it to me. As I was leaving, Daniels stated that she was, "going to bring up a law suit and sue the town, Chief Mosca and myself if nothing was done to Viggiano." Daniels meant to say Torrenti.

Also on September 17, the day of the assault, Jean Castagno spoke to defendant Townsley, who told Castagno that she knew that what Daniels had said about Torrenti was "absolutely not true" and advised her not to believe a word of it. Castagno Aff. ¶ 4. When Castagno asked Townsley whether she had spoken to Chief Mosca, Townsley stated " 'yes, I know all

about it and what Ruth is saying is not true.' " *Id.*

On September 25, 1998, Perroti returned to Daniels' home to take her statement, after the police department had received a letter from her indicating that she wished to make a statement now that she had recovered from the traumatic experience. Her letter (Pl.' Ex. D), states that "[a]t the time that I was questioned [by Officer Perroti] about the verbal abuse and threats of bodily harm, I was suffering from considerable physical and emotional distress, and was in fact under the care of my cardiologist.... [T]he manner in which this report was taken did not allow me time to recover from what was quite a frightful experience, particularly for someone of my advanced years." However, Daniels was not home. Perroti then returned to Daniels' house on September 27, at which point she became belligerent and refused to give a statement. *See* Perroti Aff. ¶¶ 16–20. On October 3, 1998, Daniels delivered a statement to the police that allegedly corrected inaccuracies in the statement prepared by Perroti. Daniels Aff. ¶ 16.

On October 1, 1998, Perroti took a written statement from Clare Porzio, who had been present at the transfer station during the incident. In the statement, Porzio stated that she had approached Daniels and Torrenti because Torrenti was yelling at Daniels, and she wanted to help them. She further stated that she had not seen any physical contact between Daniels and Torrenti and that "she did not hear Torrenti say anything threatening to the plaintiff or anything with respect to opening her mouth so he could make her eat the petition." *See* Perroti Aff. ¶¶ 21–24; Def.'s Ex. D. On October 7, 1998, Detective Sergeant Heiney completed a report that detailed the layout of the transfer station and the position of the parties at the time of the incident; from the report, Heiney concluded that Sullivan was within 50 feet of the plaintiff at the time, based on his statements of where he was standing. *See* Perroti Aff. ¶¶ 25–29.

The Old Saybrook Police Department's report was sent to the States's Attorney's Office of the Judicial District of Middlesex for review; based on the report, the State's Attorney's Office found that an arrest was not warranted but that the police department could issue a simple infraction for creating a public disturbance. In accordance with past practice of the department, because Perroti had already issued a verbal warning, no infraction was issued. *See* Perroti Aff. ¶¶ 30–32; Note from A.S.A. John Cashmon, Ex. I.

In response to Daniels' allegations in her October 3, 1998 statement that Perroti had fabricated the report, the department conducted an internal investigation of her charges. On October 18, 1998, Deputy Chief of Police Thomas O'Brien completed an "Investigation of Alleged Falsified/Fabricated Report" (Ex. J) which concluded that it was "obvious" that there was no indication that Perroti had falsified or fabricated evidence in the report, and that "after reviewing all the statements and reports filed by Plt. Perroti, it is apparent that Ms. Daniels has a political agenda she wishes to pursue. Her repeated reference to republicans and the involvement of Jean Castagna [sic], a political activist (whose husband is Democratic Town Chairman) and William Gesick, another political activist and former Democratic Town Chairman, are quite obvious."

## II. Discussion

Daniels claims that Perroti falsified the police report during his investigation of the incident, and that his decision not to arrest Torrenti, based on the falsified police report, deprived her of equal protec-

tion of the law. *See* Amended Compl. ¶ 10. She alleges that Mosca willfully failed to investigate her claims because he was aware that she was a vocal critic of the Town of Old Saybrook and he hoped to chill her First Amendment rights. *See id.* ¶ 11. Daniels further claims that Townsley was "aware of the assault on plaintiff at the transfer station, the police investigation of it and the plaintiff's allegations that defendant Perroti had filed a knowingly false police report" and that "in order to chill the plaintiff in the plaintiff's exercise of her First Amendment rights, defendant Townsley directed defendant Mosca to take no further steps in investigating the plaintiff's complaint." *Id.* ¶ 12.

Defendants Townsley, Mosca and Perroti assert that they are entitled to summary judgment on the § 1983 claims because the undisputed facts demonstrate that their conduct did not deprive Daniels of her constitutional rights. They also argue that in any event, they are entitled to qualified immunity on all of Daniels' § 1983 claims. In response, Daniels claims that disputed issues of fact preclude entry of summary judgment.

### A. *Summary Judgment Standard*

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Silver v. City Univ.,* 947 F.2d 1021, 1022 (2d Cir.1991). The moving party bears the initial burden of establishing that no genuine issues of material fact exist and that the undisputed facts show that he is entitled to judgment as a matter of law. *Rodriguez v. City of New York,* 72 F.3d 1051, 1060 (2d Cir.1995). In determining whether a genuine issue of material fact exists, all

ambiguities are to be resolved against the moving party. *See Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988).

However, a party seeking to avoid summary judgment cannot "rely on mere speculation or conjecture as to the true nature of facts to overcome the motion." *Lipton v. Nature Co.,* 71 F.3d 464, 469 (2d Cir.1995) (*quoting Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable, ... or is not significantly probative, ... summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted).

### B. *Equal Protection claim against Perroti*

Plaintiff argues that Perroti denied her equal protection of the laws by not vigorously prosecuting Torrenti. She asserts that Perroti's decision to issue only a verbal warning was unconstitutional because it was based on an impermissible motive, the desire to chill her speech, which led him to falsify the police report and then not to arrest Torrenti. Amended Compl. ¶ 10. Perroti argues that his investigation did not violate Daniels' constitutional rights, and alternatively, that he is entitled to qualified immunity.

██ "As a general rule, police officers are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe

their acts did not violate these rights." *Javid v. Scott,* 913 F.Supp., 223, 226 (S.D.N.Y.1996) (*citing Oliveira v. Mayer,* 23 F.3d 642, 648 (2d Cir.1994), *cert. denied,* 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995)). However, where, as here, the alleged constitutional violation involves an allegedly improper motivation for conduct that might otherwise be considered objectively reasonable, the Second Circuit has recognized that "applying an objective test to a subjective element is a contradiction in terms: it would compel an inquiry as to whether a person reasonably could have thought that he in fact thought something." *Sheppard v. Beerman,* 94 F.3d 823, 828 (2d Cir.1996). In order to "balance[ ] the interests of the official claiming immunity against the interests of the [plaintiff] asserting unconstitutional motive: 'upon a motion for summary judgment asserting a qualified immunity defense in an action in which an official's conduct is objectively reasonable but an unconstitutional subjective intent is alleged, the plaintiff must proffer particularized evidence of direct or circumstantial facts ... supporting the claim of an improper motive in order to avoid summary judgment." *Id.* (*quoting Blue v. Koren,* 72 F.3d 1075, 1084 (2d Cir.1995)).

### 1. Perroti's conduct was objectively reasonable

■ It is undisputed that Perroti investigated the allegations, interviewed witnesses and sent an officer to the scene of the assault to determine the approximate location of various witnesses at the time of the incident. Not only did Perroti warn Torrenti about his harassing behavior and the risk of future punishment if Torrenti engaged in such behavior again, but he obtained a confession and a written apology from Torrenti to Daniels. Under these circumstances, particularly as there is no evidence that Torrenti has engaged in any conduct that might suggest that a warning was ineffectual, this Court cannot find that Perroti's decision to verbally warn rather than arrest Torrenti following his investigation of Daniels' complaint was not objectively reasonable.

### 2. Plaintiff has not shown evidence of an improper motive

Daniels has not submitted particularized evidence indicating that Perroti was motivated by an unconstitutional intent to chill her First Amendment rights. Daniels relies on the existence of on-going political animosity between her and Chief Mosca and Townsley to support her argument that Perroti conducted the investigation in a manner designed to intimidate her into silence. However, this is precisely the type of conclusory evidence rejected in *Blue v. Koren,* 72 F.3d 1075, 1084 (2d Cir.1995).

The Court has already concluded that Perroti acted objectively reasonably in his investigation and decision to issue a verbal warning. The Second Circuit has cautioned that "[t]he reasonableness of the conduct is itself substantial evidence in support of the motion [for summary judgment] ... Otherwise, the qualified immunity defense would be hollow indeed. Officials who may in the course of carrying out their duties have continuing run-ins with those whose conduct the officials must monitor, will be forced to go to trial when the only evidence of unconstitutional motive may be a prior dispute with the plaintiff, if that." *Id.* The court in *Blue* held that "particularized evidence of improper motive may include expressions by the officials involved regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken." *Id.* Absent such evidence, "a conclusory proffer of an unconstitutional motive should

not defeat the motion for summary judgment." *Id.*

Applying these factors to the facts here, and drawing all reasonable inferences in favor of the plaintiff, the evidence relied on by Daniels does not meet these requirements. First, Daniels provides no evidence of Perroti's state of mind and there is nothing suggesting that the investigation of Daniels' claim was in any way different from other investigations of assaults that might suggest that Daniels had been singled out. Although O'Brien's report characterizes Daniels' allegations as part of a political vendetta against republicans, relying on statements contained in Perroti's reports to that effect, this is not enough to impute an unconstitutional motivation to Perroti, as there is nothing from which to conclude that Perroti therefore did not act thoroughly or properly in either his investigation or his conclusion, based in part on the decision by the State's Attorney's office that an arrest was not warranted, that a verbal warning was adequate.

Daniels also asserts that Perroti falsified information in his report. However, absent any further evidence to support this allegation, the differences between her version of the events and Perroti's account are not significant enough to permit an inference that Perroti intentionally falsified or fabricated the report. In her affidavit, Daniels states that the report Perroti wrote contained the following misrepresentations:

[he] that I said I approached an older while [sic] man; that I stated he took the petition and ripped it into pieces and threw it into my car; that I stated he said open your mouth so you can eat it; that I stated the man never touched me at all; that I stated I didn't want to give a statement; that I stated I wanted to forget about the incident; that I described the pick-up truck as green.

Daniels Aff. at ¶¶ 11, 14. Daniels also disputes whether Sullivan was standing within 50 feet of her at the time of the assault.

However, Daniels' own statement filed with the police department on October 3, 1998 demonstrates that none of these alleged inaccuracies create an inference that Perroti deliberately falsified the report. Further, plaintiff has not attempted to demonstrate that had the allegedly false statements not been included, the investigation would have proceeded any differently or that the State's Attorney's office would have determined that Torrenti should be arrested. First, Daniels' revised statement does not indicate whether Torrenti touched her. Her statement further confirms that Torrenti took the petition, crumpled it, and threw it into the trunk of her car. The difference between "open your mouth so you can eat the petition," as reported by Perroti, and "open your mouth … open your mouth. I'll stuff it down your throat and shut you up for good," as reported by Daniels, without more, does not support plaintiff's claim that Perroti deliberately falsified his report of her allegations, particularly in light of statements in the police report from Sullivan that Torrenti yelled at Daniels to "'get [the petition] out of my face you f____ing idiot and this is what I think of your petition'" and Porzio that she had heard Torrenti yelling but did not hear him "say to her to open up her mouth of anything threatening." Perroti's investigation, therefore, considered plaintiff's allegations about the alleged threat of bodily harm from the outset, and as the statements from various witnesses did not corroborate that part of plaintiff's statement, Perroti's failure to report plaintiff's account of what she claims was said verbatim is not material. Finally, Perroti's reporting that Daniels stated that she did not want to pursue the claim or give a

statement at the time, even if inaccurate, was corrected by Daniels' letter indicating that she did in fact want to give a statement and press charges, and Perroti's subsequent attempts to take a statement from Daniels. Any inaccuracy in this respect would therefore be immaterial to the investigation. The remaining disputes—who approached whom and the color of Torrenti's car—are similarly inconsequential. At best, plaintiff's evidence suggests that Perroti made some mistakes in his reporting of the incident, but there is nothing in the record before the Court from which the conclusion that the mistakes constituted a deliberate falsehood can be drawn.

Finally, while the affidavit of Jean Castagno does suggest that Mosca and Townsley were aware of the incident immediately after it occurred, it cannot support the inference plaintiff asks this Court to draw: that the investigation was tainted from the beginning and that the department gave a mere slap on the wrist to Torrenti after he assaulted an older woman precisely because of her exercise of her First Amendment rights as part of a concerted effort to silence her. Perroti is therefore entitled to summary judgment on qualified immunity grounds.

### C. *Section 1983 conspiracy claims against Mosca and Townsley*

Daniels claims that Townsley and Mosca violated 42 U.S.C. § 1983 by conspiring to deprive her of her First Amendment rights by refusing to vigorously prosecute Torrenti following the incident at the transfer station. Defendants argue that they are entitled to summary judgment because there is no evidence that they were personally involved with the investigation and plaintiff has failed to allege a specific chill on her speech. Because the Court agrees with defendants on the first ground, it need not reach the question of whether plaintiff's allegations of the chill on her speech are sufficiently specific to satisfy the standard as set forth in *Mozzochi v. Borden,* 959 F.2d 1174, 1178–79 (2d Cir.1992).

The Second Circuit has held that

[t]o prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private actor; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal.

*Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999). "Because of the relative ease with which conspiracy allegations may be brought, and the substantial disruption of governmental function that they can cause, federal courts require 'more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive the plaintiff of his constitutional rights.'" *Nwanze v. Philip Morris Inc.,* 100 F.Supp.2d 215, 219 (S.D.N.Y.2000); *accord Dwares v. City of New York,* 985 F.2d 94, 99–100 (2d Cir.1993).

Absent some showing by plaintiff of personal involvement by defendants with the alleged constitutional violation, defendants are entitled to summary judgment on the § 1983 claims against them. *See Whiting v. Incorporated Village of Old Brookville,* 79 F.Supp.2d 133, 135 (E.D.N.Y.1999) ("Section 1983 imposes liability only upon those who actually cause a deprivation of rights, and thus, the 'personal involvement of [each] defendant in alleged constitutional deprivations' is a necessary element of a Section 1983 claim.") (*citing Snider v. Dylag,* 188 F.3d 51 (2d Cir.1999); *Blyden v. Mancusi,* 186 F.3d 252, 264 (2d Cir.1999); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994)). "[M]ere knowledge of the existence of unconstitutional conduct or association with the alleged conspirators alone is insufficient to establish membership in a

conspiracy." *Franzon v. Massena Memorial Hospital,* 89 F.Supp.2d 270, 277 (N.D.N.Y.2000) (*citing United States v. Macklin,* 927 F.2d 1272, 1277 (2d Cir.), *cert. denied,* 502 U.S. 847, 112 S.Ct. 146, 116 L.Ed.2d 112 (1991)). The personal involvement required to support a finding of liability under § 1983 "may take the form of direct participation in the deprivation, a defendant's failure to remedy an alleged wrong after learning of it, the creation of a policy or custom of unconstitutional practices, or gross negligence in managing subordinates." *Whiting,* 79 F.Supp.2d at 136 (*citing Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996)).

■ Daniels claims that Townsley directed Mosca not to further investigate the assault against Daniels as part of an effort to chill Daniels' speech. In support of their motion for summary judgment, defendants submitted an affidavit from Townsley, stating that she "had no contact with Chief Mosca or Officer Perroti with respect to the investigation of the alleged September 17, 1998 incident." Townsley Aff. ¶¶ 4–5.[2] In opposition, Daniels relies on the affidavit of Jean Castagno, which states that after Castagno spoke with Daniels about the incident on September 18, 1998, she ran into Townsley at the Town Hall and the following occurred:

> [I] said "did you hear what John Torrenti did to Ruth?" When I began to tell her what Ruth had told me she quickly snapped, "I know that's absolutely not true," she then advised me not to believe a word of what Ruth said. I then asked, "But Susan, have you spoken to the chief?" She snapped, "yes, I know all

about it and what Ruth is saying is not true."

Castagno Aff. ¶ 4.

The Castagno affidavit thus suggests that Townsley had some awareness of the incident on September 18, and had already spoken to Mosca about the assault. However, it does not raise a dispute as to her "involvement with the investigation" itself, which she denies. Although Daniels is not required to produce direct evidence to show that Townsley directed Perroti or Mosca to conduct the investigation in such a way as to chill Daniels' speech, *see Pangburn,* 200 F.3d at 72, she must nonetheless provide some evidence showing that Townsley exerted some influence or control over the investigation. As Daniels has failed to so, Townsley is entitled to summary judgment on the § 1983 conspiracy claims against her.

■ With respect to Chief Mosca, Daniels asserts that she has a history of opposing Mosca on various political issues, and that he willfully failed to investigate both the incident with Torrenti and Daniels' allegations that the police report prepared by Perroti was inaccurate in an effort to chill her speech. *See* Compl. ¶ 11; Daniels Aff. ¶ 15.[3] Mosca's affidavit states that he "had no contact with Officer Perroti regarding the manner in which he investigated the incident." Mosca Aff. ¶ 5. In her own affidavit, Daniels states that "After realizing that the police had misrepresented my account of the altercation, I complained to the Police Department, including writing directly to Chief Mosca, but was unsuccessful at having my statements corrected, until I hand delivered my own witnessed corrected statement." Daniels

---

**2.** In their motion for summary judgment, defendants state that "Perroti expressly denies any communication with Mosca or Townsley with respect to any aspect of the police investigation." Memo. in Supp. of S.J. at 9–10.

However, nowhere in Perroti's affidavit does he make such an assertion.

**3.** Daniels does not assert a claim of supervisory liability against Chief Mosca.

Aff. ¶ 16. After Daniels wrote to Mosca, Perroti went to her home twice to try to take her statement; the first time she was not home and the second time she refused to speak to Perroti. From this, some contact between Perroti and Mosca reasonably can be inferred. However, this conduct suggests nothing improper about the investigation and provides no basis for concluding that Mosca engaged in any improper behavior. Further, as to Daniels' claims that her allegations of fraud by Perroti were not properly investigated, O'Brien investigated these allegations and concluded there was no foundation for the claims. There is again no evidence that Mosca had any improper involvement with this investigation. Finally, as noted above, Castagno's affidavit states that Townsley said that she had discussed the incident with Mosca, providing further evidence that Mosca had some awareness of the investigation. However, the fact that Mosca was aware of the allegations does not lead to the conclusion that he improperly failed to investigate her allegations.

Thus, Daniels' claim against Mosca suffers from the same evidentiary insufficiency as her claim against Townsley: there is simply no evidence, direct or circumstantial, that Mosca wilfully failed to investigate plaintiff's allegations or directed Perroti to pursue the investigation in a manner calculated to chill plaintiff's First Amendment rights. Mosca is therefore entitled to summary judgment on the § 1983 conspiracy claims against him.

### III. Conclusion

Drawing all inferences in plaintiff's favor, Daniels' evidence does suggest, as plaintiff's counsel argued at oral argument, a "circumstantial flavor" of improper conduct. However, a flavor cannot defeat summary judgment on qualified immunity. On the record currently before the Court, as Daniels has not provided any particularized evidence that Perroti had an improper motivation in conducting the investigation of the assault as he did, or any evidence from which a fact-finder could reasonably infer that Townsley or Mosca had personal involvement with the investigation of the assault, defendants' Motion for Summary Judgment [Doc. # 30] is GRANTED.

■ Given this Court's resolution of plaintiff's § 1983 claims against Mosca, Townsley and Perroti, her state law claim of negligent and/or intentional assault and battery against defendant Torrenti is the sole claim remaining in this case. Pursuant to 28 U.S.C. § 1367(c), "district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." *Accord Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 357, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). While the district court has the discretion to retain jurisdiction, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point toward declining jurisdiction over the remaining state-law claims." *In re Merrill Lynch Ltd. Partnerships Litig.,* 154 F.3d 56, 61 (2d Cir.1998) (*quoting Carnegie–Mellon Univ.,* 484 U.S. at 350 n. 7, 108 S.Ct. 614); *see also Castellano v. Board of Trustees,* 937 F.2d 752, 758 (2d Cir.1991) ("if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"). In consideration of these factors, the Court declines to exercise supplemental jurisdiction over plaintiff's assault claim against Torrenti.

### Conclusion

Judgment shall enter in favor of defendants Townsley, Mosca and Perroti. The

claim against defendant Torrenti is dismissed.

IT IS SO ORDERED.